Dissenting memorandum.
In this special proceeding, initiated pursuant to section 330 (subd. 2) of the-Election Law, petitioner-respondent requests that we affirm an order of the Appellate Division, Second Department, authorizing a new primary election for the position of Democratic Assembly District Leader — (Male) for Part B of the 22nd Assembly District. The majority of this court is disposed toward granting this request concluding that the initial election was marked by ‘ ‘ such frauds or irregularities as to render impossible a determination as to who rightfully was nominated or elected ’ ’.
Before considering the “ specifics ” relied upon by the majority, we would first comment on the setting in which the initial election was held. This year, for the first time, primaries were conducted State-wide. Accordingly, more voting machines were required. To meet this demand, a plan was initiated whereby the primary could be conducted without providing each political party a separate voting machine in each polling place. Instead, it was decided that the space on the individual machines could be split by the different political parties. To do this, it was first necessary that the machines be divided according to *600 the parties, and that levers be installed which would limit a particular voter’s choice to those persons on the machine who were aspirants for office in his own political party. Finally, to insure that each person was properly limited to voting for his party’s candidates, each voter, after registering, was given a card of a distinctive color corresponding to the color ascribed to his party. Those persons operating the machines were thus informed of the voter’s registration and would set the machine accordingly. The uniqueness of this procedure is apparent. It is equally obvious that such a plan, when used for the first time and because it encompassed more steps than the standard primary procedure, would produce more mechanical and human errors than are usually associated with elections. Discrepancies alone, therefore, between various cross references of figures are more likely to occur and, in light of all the claims asserted both in this court and the lower courts of this State pertaining to this primary election, it would indeed be suspicious for any district or area to report a totally unimpeachable result.
We do not agree with the majority that, to the extent the ‘ ‘ irregularities ’ ’ were attributed to the excess in the machine count over the number of signed cards, there is a basis for invalidating the difference. Even where there is an excess machine count in a case where machines were used for more than one party, it is pure speculation to assume without any testimony that there were repeaters. (See Matter of Straus v. Power, 22 N Y 2d 886, decided Sept. 26, 1968.) It is well settled that the results of an election are entitled to a presumption of regularity and that a party attempting to impeach these results carries the burden of proof. In Matter of Nodar v. Power (18 N Y 2d 697) there were 1,417 votes cast as against 2,827 in this case. Hence the percentage of irregularities here is 50% less than in Matter of Nodar (supra) which is, therefore, inapplicable.
An inexplicable inference, advanced by petitioner and accepted by the majority, arises from the Conservative vote in the district. The record, before us indicates that there was no contested Conservative primary. From this evidence alone, the majority has concluded that Conservatives voted in the Democratic party. Proof of such a contention should lie, if at all, in the figures for registration and poll count amongst Democrats *601 in the same district. Thus, if petitioner established that more Democratic votes were cast than could have been cast because of the Conservative registrants, there would indeed be a basis for this contention. Such evidence, however, does not exist. In fact, no testimonial evidence has been presented to support any allegation.
We conclude that there is no basis for sustaining the invalidation on the basis of “missing Party enrollments ” and Conservative registrants. “ An election will not be overturned upon a mere mathematical possibility that the results could have been changed ’ ’ (Matter of Badillo v. Santangelo, 15 A D 2d 341, 342). In that case, the court, noting that the two candidates had each received approximately 50% of the vote as here and that not all those participating in the election chose to cast a ballot in their particular contest, concluded that there was no reason to assume that these invalidated votes had any impact on the election’s outcome. This principle has been recognized by this court many times. (See, e.g., Matter of Acevedo v. Power, 18 N Y 2d 700.)
It is evident that all these “irregularities” were in fact attributable to mechanical and human error. As the burden of establishing the adverse effect on him of the ‘ ‘ irregularities ’ ’ rests on the petitioner, it is inconsistent with the prevailing conditions at this primary as compared with the primary held in Matter of Nodar (supra) to refuse to dismiss the petition in this case as we did in Matter of Acevedo v. Power (supra) where the vote cast was equivalent to the vote cast here.
The order of the Appellate Division should be reversed and the petition dismissed.
Chief Judge Fuld and Judges Keating and Jasen concur with Judge Bkeitel ; Judges Burke, Scileppi and Bergan dissent and vote to reverse and dismiss the petition in a memorandum.
Order affirmed, without costs.